[No. 15106. Department Two. May 14, 1919.]

W. N. PATE *et al., as Executors, etc., Respondents,* v.
HENRY PETERSON *et al., Appellants.*[1]

STATUTES (86, 91)—CONSTRUCTION—RETROACTIVE OPERATION—REM-
EDIES. A prior action at law to establish existing water rights, is
not affected by the water code, Laws 1917, p. 447, § 1, which saved
all existing rights of the state and provided that nothing therein
shall affect existing rights of any riparian owner.

WATERS AND WATER COURSES (37, 59)—DIVERSION—PRESCRIPTIVE
RIGHTS—USE OF DITCH FOR IRRIGATION. Plaintiff's evidence suffi-
ciently establishes his prescriptive rights to the use of a ditch on
adjoining lands to convey waters for irrigation, where it appears
that adjoining owners of riparian lands jointly built the ditch and
used the same to convey surplus waters, all doing an annual share
of the work on the ditch and equally using the water according to
their respective needs for a period of over twenty-four years.

Appeal from a judgment of the superior court for
Okanogan county, Neal, J., entered April 20, 1918,
awarding to the plaintiffs the right to certain waters
for irrigation, after a trial on the merits to the court.
Affirmed.

*Lee & Kimball,* for appellants.

*P. D. Smith,* for respondents.

HOLCOMB, J.—Respondents, claiming an undivided
one-third interest in the waters of Libby creek, a
small watercourse in Okanogan county, brought ac-

[1]Reported in 180 Pac. 894.

tion to establish and quiet their title to the same, together with a like interest in a ditch across the land of the appellants from the creek to the land of the respondents, and to enjoin interference with the water right and ditch by the appellants.

Decree was for respondents, adjudicating them to be entitled to a water right for thirty acres of their land, requiring delivery at the north line of their land of thirty miners' inches of water, under a four-inch head, during the entire irrigating season, from April 15 to October 1, annually, and enjoining interference with their water right and ditch.

The case being of equitable cognizance, the court was not required to, and did not, make any findings and conclusions, and the case is before us on appeal to be determined *de novo*. Appellants objected to the trial by the court, and later applied to require the state hydraulic engineer to intervene, on the ground that the new water code, chapter 117, Laws 1917, p. 447, gave to the state hydraulic engineer the power, and imposed upon him the duty, of regulating and controlling the diversion of waters and determining water rights. This objection and the application were denied by the court.

Section 1, chapter 117, Laws 1917, p. 447, is as follows:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing

right acquired by appropriation, or otherwise. They shall, however, be subject to condemnation as provided in section 4 hereof, and the amount and priority thereof may be determined by the procedure set out in sections 14 to 26 inclusive hereof.''

Section 11 specifically authorizes the *Attorney General* to appear in any litigation pending at the time of the law taking effect.

It is asserted by appellants that it is fundamental that this law could not take away any existing rights, and that the court confused that idea with the administration of the act itself; that the right to the use of the waters involved by the respective parties had never been judicially determined, and that the mere bringing of the present suit before the water code went into effect did not in any way give any party a right which he did not have. It is apparent, however, that the water code, by § 1, saved all existing rights to waters within the state, and that nothing contained in that act should be construed to ''lessen, enlarge or modify the existing rights'' of any riparian owner or appropriator. Disregarding any question of the adjudication of rights not then vested by decree or otherwise, which is not to be determined here, this action was begun to establish and adjudicate by judicial decree alleged existing rights in and to certain waters, of which proceeding the court acquired jurisdiction prior to the taking effect of the water code, and in any event would be required to retain jurisdiction until final determination. The water code, unless it could sweep away all existing causes of controversy and wipe out the subject-matter, could not divest the superior court of jurisdiction of cases of which it had then acquired jurisdiction of the person and subject-matter involved. The trial court was therefore correct in his rulings.

Upon the merits of the case, appellants insist that the court erred in rendering a decree in favor of respondents, and contend that the evidence did not justify such decree, or any decree in favor of respondents, but required an adjudication in favor of appellants.

The lands involved are three adjoining ranches, lying along the west bank of the Methow river; the first, or upper ranch, being known as the "Libby Ranch," now owned by appellant Culvert Realty Company; the second, the "Risley Ranch," now owned by the appellants; and the third, the "Simmons Ranch" now owned by the respondents. The ranch owned by the respondents was originally settled upon by a man named Hancock, in 1889, who abandoned it; and in 1890, one Simmons, a predecessor of respondents, settled upon the ranch and continued there until 1900, when he sold out. The respondents are the owners by mesne conveyance from Simmons. The Libby lands are riparian to Libby creek, the creek flowing through them to the Methow river. Appellants contend that they concede, and always have conceded, to respondents the right to take and use the surplus or waste waters of the stream, the consideration being the small amount of work required to maintain the ditch. While the evidence is somewhat conflicting, there is competent testimony to the effect that the owners of these three ranches commenced the construction of a joint irrigation ditch in the year 1889, and that by the year 1891 all of them had the water on their ranches; that thereafter they all did an annual share of the work on the ditch, and all equally used the water according to their respective needs until Mr. Culver acquired a portion of the land now owned by appellants in 1913.

During more than twenty-four years, it appears that the users of the water divided all of it with each other, rotating with one another at any time the water

became low, and that the quantities used became fixed to the extent claimed by respondents, during that time. Risley, one of the predecessors of some of the appellants, who denied the right of respondents to one-third of the water at the trial, is conclusively contradicted by an agreement entered into between him and Simmons, the predecessor of respondents, on July 5, 1894, wherein he agreed in writing with Simmons, acknowledging the right of Simmons to take water out of the ditch "at the flood-gates owned by the said Risley and the said Simmons," and agreed with Simmons that whenever he required water along the west branch of the ditch he would turn in, or cause to be turned in, "the water required by him exclusive of the water that is running in said west branch of said ditch," if any, and that he and Simmons would do equal shares of the repairs on the ditch as far as they used it. This agreement in writing, in addition to the evidence as to the inception of the water rights, almost conclusively establishes the right of respondents' predecessor Simmons to the water flowing in the ditch at its source, and not the mere waste or surplus waters, and that the ditch was a joint ditch established and maintained by both of them. The case is very like that of *Villa v. Keylor,* 93 Wash. 164, 160 Pac. 297, where we said:

"The evidence, we think, warrants the conclusion that for a period of some twenty years prior to the commencement of this action, each of the parties diverted from the creek and used upon their respective tracts of land substantially the same proportionate amount of water of the creek as is awarded to them by the decree in this action."

It was also contended in that case that the lower riparian proprietors had riparian rights which were

4—107 WASH.

not affected by the appropriation and use of one-half of the water by the upper owner and user. We held that:

"The theory upon which the trial court so apportioned the water was that this continued use of the water by mutual consent ripened into a binding agreement between them as to the apportionment of the water, though there may not have been an express agreement between them to that effect. That such a continual mutual diversion and use of all the waters for such period of time would become determinative of the rights of the parties touching the apportionment of the water seems plain as a matter of law, especially when such apportionment seems equitable, as it does in this case."

In the instant case, as in the foregoing, it is plainly a question of facts, and the facts not only do not preponderate against the decree of the lower court, as appellants contend, but necessarily preponderate in favor of respondents and the decree. It would be unnecessary to analyze the evidence in detail or to enter upon any lengthy discussion as to the law governing the question. It is practically controlled by the decision above quoted. Decree affirmed.

CHADWICK, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.