THE STATE OF WASHINGTON, *on the Relation of Hartvig Roseburg, Respondent,* v. TONY MOHAR, *Appellant.*[1]

[1]Reported in 13 P. (2d) 454.

*Snively & Bounds* and *Robert J. Willis,* for appellant.

*Short & Short,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court of Kittitas county which declared the defendant, Tony Mohar, guilty of contempt of court for his failure to obey a judgment made and entered in the case of Roseburg et ux. v. Mohar et ux., No. 8074 of that court.

The controversy between the parties in cause No. 8074 involves the use of the waters of a certain spring located on the west half of the west half of the southeast quarter of section 3, township 19 north, range 15 east, W. M. In the complaint in that action, Roseburg and wife based their claim to the use of the waters of the spring on an appropriation by one John Surrell in October, 1884.

It appears that Surrell had settled on a portion of an adjoining section of land under a homestead entry, and by means of a ditch, connected with the channel of the stream flowing from the spring, had appropriated all of its waters for irrigation and stock purposes. In 1918, Roseburg and wife became the owners, by mesne conveyances, of the Surrell land and of the use of the waters appropriated by him. Their complaint sought to enjoin Mohar and his wife from interfering with their use of the water, and from interfering with them in fencing the spring so as to protect it from pollution.

Tony Mohar filed an answer which was merely a general denial. His wife, Annie Mohar, appearing for herself and her minor children by a former husband, filed a separate answer, setting forth that the lands on which the spring was located were included within the grant of land from the United States to the Northern

Pacific Railroad Company on July 2, 1864; that the lands ceased to be public lands, as a result of which, they contend, the water was not subject to appropriation by Surrell; and that, through a contract of purchase from the railroad company, followed by a deed, they had become the owners of the land on which the spring was located and the consequent right to the exclusive use of its waters.

Issues were made up, and the cause was tried by the court on March 3, 1930. Thereafter, on June 16, 1930, the court filed its memorandum decision, which found that the Roseburgs' right to the use of the waters from the spring was paramount to that of the Mohars. On August 27, 1930, judgment was entered, perpetually enjoining the defendants in that action from interfering, in any way, with the right of the Roseburgs to use the waters of the spring, and from interfering with the Roseburgs in fencing or piping the waters or in protecting them from pollution. The judgment further ordered and directed the Mohars to remove a pipe-line which they had previously connected with the spring.

On September 15, 1931, the relator began the present contempt proceeding by filing an affidavit setting up the judgment in cause No. 8074, and reciting that the defendant, Tony Mohar, had refused to disconnect his pipe-line, as ordered by the court; that relator himself had thereupon disconnected it, but that Mohar had immediately re-connected it; and that, as often as relator disconnected the pipe-line, Mohar had re-connected it again. The affidavit further alleged that the acts of Mohar were in total disregard and defiance of the court's order and judgment.

In response to an order to show cause, Mohar appeared in the contempt proceeding and raised a series of objections thereto. These we shall presently notice.

·The objections having been overruled, the court proceeded with the hearing, and upon its conclusion found against the defendant. On October 6, 1931, the court made its findings of fact, conclusions of law and decree adjudging defendant guilty of contempt and imposing a fine of ten dollars and costs. The defendant has appealed.

The appellant first contends that his demurrer to the affidavit supporting the order to show cause should have been sustained, because it failed to allege that he had been served with a copy of the injunctive order or that he had knowledge thereof. It is not necessary that a party charged with contempt for refusal to obey an order of court be personally served with a copy of the order, if it appears by the affidavit that he had knowledge of its contents. The gist of the offense is the commission of the violative act with knowledge that such act has been enjoined by the court, whether formal notice has been served or not. *State ex rel. Lindsley v. Grady,* 114 Wash. 692, 195 Pac. 1049, 15 A. L. R. 383.

While the affidavit did not specifically state, in *haec verba,* that the appellant had knowledge of the contents of the order, it used language that is capable of no other meaning. It charged him with doing the act in total disregard of the court's judgment and in defiance of its order. There was not merely a passive noncompliance with it, but there was a positive defiance of it. An act in defiance of an order necessarily imports knowledge of it. As defined in Funk and Wagnall's New Standard Dictionary, "defiance" is "a contemptuous opposition or disregard openly expressed in words or actions." We conclude that the affidavit was sufficient.

The appellant next contends that the court did not have jurisdiction to enter judgment in the original

cause; that it was therefore void, and, being void, had no effect upon the appellant; and that, consequently, appellant could not be held for contempt for refusal to obey its dictates. This contention is based upon the proposition that the legislature, by enacting what is known as the "water code" (Rem. Comp. Stat., §§ 7351 to 7402, inclusive), withdrew from the jurisdiction of the superior court all matters affecting the adjudication of water rights, except as therein provided.

The water code was enacted in 1917. It created an administrative officer known as the state hydraulic engineer, and imposed upon him the powers and duties incident to the supervision of public waters within the state, and required him to regulate and control the diversion of such waters.

The act prescribes a procedure whereby, upon the petition of anyone claiming the right to divert waters, that officer is required to make an investigation and prepare a statement of facts to be submitted to the superior court. After the filing of such statement of facts, a summons is issued, and upon the completion of its service, the proceeding is referred to the state hydraulic engineer for the purpose of taking testimony. The state hydraulic engineer himself then files with the clerk of the court a transcript of the testimony, together with a full report by him thereon. The court then proceeds as in case of reference of a suit in equity, taking further evidence, if necessary, and finally enters its decree fixing the rights of the parties.

In determining the extent of the power, authority and jurisdiction of the state hydraulic engineer, the following sections of the statute deserve consideration:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and

any right thereto, or to the use thereof shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise. They shall, however, be subject to condemnation as provided in section 4 hereof, and the amount and priority thereof may be determined by the procedure set out in sections 14 to 26, inclusive, hereof.'' Chap. 117, Laws of 1917, p. 447, § 1 (Rem. Comp. Stat., § 7351).

''Wherever it shall appear to the state hydraulic engineer that any litigation, whether now pending or hereafter brought, may adversely affect the rights of the public in water, it shall be his duty to request the attorney general to appear and protect the interests of the state.'' Chap. 117, Laws of 1917, p. 452, § 11 (Rem. Comp. Stat., § 7361).

It is to be noted from § 1, *supra,* that the act, passed in 1917, makes the dominion of the state over waters within its territory subject to existing rights, and limits its application to those rights of appropriation which are acquired *in futuro.* It specifically provides that *existing* rights, acquired by *appropriation,* or otherwise, shall not be *lessened* or *modified* by any construction placed upon any of its provisions. It is to be further noted from § 11, *supra,* that the legislature contemplated that there might be litigation, other than as provided for in the act, relative to water rights, and authorized and directed the state hydraulic engineer to protect the interests of the state if he conceived that the rights of the public were affected thereby.

These provisions are strongly persuasive of the conclusion that the legislature fully recognized that certain rights to the use of waters had already passed

into private ownership and were no longer subject to state admininstration; and further, that disputes between private litigants were of no concern to the state unless the rights of the public were adversely affected. We would have no difficulty in arriving at this conclusion unqualifiedly were it not for certain expressions used by this court in a decision rendered subsequent to the adoption of the water code.

In *West Side Irrigating Co. v. Chase,* 115 Wash. 146, 196 Pac. 666, this court, in discussing the history, purposes and operative effect of the act, expresses the opinion that the water code authorizes the state hydraulic engineer to control *all* waters of the state for irrigation purposes, including those which had theretofore been lawfully appropriated or acquired; and that the procedure therein provided was broad enough to include *all* disputes concerning such matters. It is to be noted, however, that, in that case, the state hydraulic engineer was merely enforcing a decree of the court theretofore rendered which had already determined the rights of the litigants before it. It did not expressly hold that the court had been wholly divested, by the act, of its former jurisdiction. That question was not in the case.

It is also of interest to note that, in a subsequent case, *Eikenbary v. Calispel Light & Power Co.,* 132 Wash. 255, 231 Pac. 946, wherein the facts are quite similar to those in the present case, the court did not place the same construction upon the act as did the court in the *Chase* case, *supra.* In the *Eikenbary* case, the defendant corporation took the position that the act of the state hydraulic engineer, in granting it permission to divert, store and use the water, precluded recovery by the plaintiff. The court did not refer at all to the *Chase* case, *supra,* but summarily dismissed the defendant's contention by quoting a portion of § 1

of the act, as set out above, thereby recognizing the force and effect of pre-existing rights.

The case of *State v. Lawrence,* 165 Wash. 508, 6 P. (2d) 363, cites the *Chase* case, but does not throw any light upon the question immediately before us.

The latest expression of this court, therefore, upon the question with which we are concerned seems to support the view that, as between private parties, the enforcement of water rights existing at the time of the adoption of the water code may be sought by a direct action in court.

■ Even if the legislature had attempted by the terms of the water code to divest the courts of their jurisdiction in such cases, we do not think it could successfully do so. The constitution of this state has clothed the superior court with original jurisdiction in all cases in equity, in all cases at law which involve the title or possession of real property, in such special cases and proceedings as are not otherwise provided for, and in all cases and proceedings in which jurisdiction shall not already have been vested exclusively in some other court. Const., Art. IV, § 6. The superior court has all the powers of the English chancery court. *State ex rel. Burrows v. Superior Court,* 43 Wash. 225, 86 Pac. 632. The jurisdiction of equity to entertain suits for quieting title to the use of waters is well settled. The courts have plenary power to settle such disputes, and their power may be invoked to give redress in proper cases where there has not been a previous adjudication, either by an administrative board of the state or by a court having concurrent jurisdiction. *Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 61 Pac. 258, 87 Am. St. 918, 50 L. R. A. 747. We therefore hold that the superior court had jurisdiction of the original case before it.

Appellant's final contention is that the court did not have jurisdiction to enter judgment in cause No. 8074 because the land upon which the spring is located had passed into private ownership prior to the time of the appropriation under which relator claims.

As has already been stated, the grant to the Northern Pacific Railroad Company was by an act of Congress dated July 2, 1864. On August 15, 1873, the railroad company filed with the commissioner of the general land office a map showing the general route of its road. The line of definite location, however, was not fixed until December 8, 1884, when an approved plat was filed with the commissioner. The appellant contends that the act of filing the plat of the general route, with the commissioner's order thereon, withdrew the lands from sale or entry from that date.

The case of *Northern Pacific Railway Co. v. Nelson,* 22 Wash. 521, 61 Pac. 703, is relied on. The case cited does support appellant's contention, but, unfortunately for him, that case was reversed on appeal to the United States supreme court, where it was held that the date of filing the map of *definite location,* and not the date of filing the map of *general route,* marked the time as of which rights to the property were to be determined. *Nelson v. Northern Pacific Railway Co.,* 188 U. S. 108, 47 L. Ed. 506, 23 S. Ct. 302. We are, of course, controlled by that decision.

In the present case, the appropriation was made in October, 1884, two months prior to the filing of the map of definite location. The contention of appellant upon this point, therefore, can not be sustained.

The judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.