The head of the bed of Crab creek is located in the eastern portion of Lincoln county, a short distance east of the town of Davenport. Thence the creek meanders in a general southerly direction to a point near the south boundary of the county, *Page 635 
where it turns toward the west, and proceeds in that direction to the town of Adrian, a short distance east of Soap lake. There the creek swings to the south, through Moses lake, to the town of Corfu, in Grant county, where it again turns to the west and flows into the Columbia river at Beverly. During a considerable portion of the year, water flows along the creek bed, sometimes sinking beneath the surface and flowing underground for various distances. We are here concerned with that portion of the creek, about three and one-half miles in length, between the outlet of Sylvan lake and the easterly boundary of the town of Odessa, in Lincoln county.
Sylvan lake is fed by Crab creek, which is also the lake's outlet. During the spring months, when the snow melts, Sylvan lake fills, and a considerable flow of water passes down the creek. During normal years, water flows down the creek as far as Moses lake, and at times even to the Columbia river. The flow, however, gradually decreases, and generally by the second week of July the water has ceased to flow past the lands with which we are here concerned.
These lands are approximately two hundred seventy acres in extent, and are irrigated from Crab creek between Sylvan lake and Odessa. The lands are divided into four ownerships: Charles E. Knott owning sixty acres; B.J. Lyons, sixty acres; A.A. King, one hundred twenty acres (these three parties being respondents herein), and C.C. Dobson (appellant herein), thirty acres. Mr. Lyons has resided on his farm for approximately forty years, and the waters of Crab creek have been used to irrigate these lands for a long period of time.
Naturally, many disputes arose between the farmers concerning the use of the water, and considerable litigation resulted. Finally, under date June 9, 1924, the *Page 636 
four owners executed a compromise agreement, which had been prepared by their respective counsel, providing for the use of the water on the four farms in rotation, the agreement apportioning the water two-ninths to Knott, two-ninths to Lyons, four-ninths to King, and one-ninth to Dobson. The agreement provided that the water should be used in rotation; that, out of every nine days, Knott should have the water two days, Lyon two days, King four days, and Dobson one day. It further provided that the beginning of the rotation season should depend upon the giving of notice, the agreement providing for the manner of giving such notice.
This proceeding was initiated by the state supervisor of hydraulics (formerly known as the state hydraulic engineer), who instituted the proceeding before the superior court for Lincoln county, seeking a judicial determination of the relative rights to the water flowing in this portion of Crab creek under the provisions of the state water code. After service of process, claims were filed by the various landowners concerned, and an order was entered appointing J.F.R. Appleby, assistant state supervisor of hydraulics, as referee, authorizing him to take testimony and report to the court. Exceptions to the referee's report were filed by all the claimants except Dobson, and the matter came before the court upon the referee's report and the exceptions thereto. The matter having been tried and submitted to the court, judgment was entered dismissing the proceeding, from which judgment the state of Washington and C.C. Dobson have prosecuted separate appeals.
The state assigns error upon the ruling of the trial court to the effect that the court was without jurisdiction over the water rights involved in this proceeding, and that the supervisor of hydraulics was without *Page 637 
jurisdiction to administer the water rights involved in the action. Appellant Dobson assigns error upon the refusal of the trial court to adopt the report of the referee, and in refusing to determine the rights of the respective claimants in their relation to the state of Washington, and in holding that the compromise agreement of June 9, 1924, settled and determined all the rights to the waters of Crab creek between Sylvan lake and Odessa. Each appellant also assigns error upon the entry of the decree dismissing the proceeding.
The wives of the respective landowners are, of course, parties to this proceeding, but in this opinion we shall refer to the husbands only.
[1] The legislature, by chapter 117, Laws of 1917, p. 447 (Rem. Rev. Stat., § 7351 [P.C. § 7203] et seq.), enacted the state water code, § 1, p. 447, thereof reading as follows:
"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise. They shall, however, be subject to condemnation as provided in section 4 hereof, and the amount and priority thereof may be determined by the procedure set out in sections 14 to 26 inclusive hereof." Rem. Rev. Stat., § 7351 [P.C. § 7203].
Section 4 of the act declares the beneficial use of water to be a public use. Section 6 provides for the appointment by the governor of a state hydraulic engineer, *Page 638 
the following sections enumerating his duties and powers. The act provides for the institution by the hydraulic engineer of proceedings before the superior court for the determination of water rights between conflicting claims and, of course, embraces many matters germane to the subject. Such a proceeding may be filed on petition of an interested party, or by the supervisor on his own initiative. Rem. Rev. Stat., § 7364 [P.C. § 7216]. By Rem. Rev. Stat., § 7370 [P.C. § 7222], the proceedings for fixing the date of hearing are outlined, and it is provided that
"A final decree adjudicating rights or priorities, entered in any case decided prior to taking effect of this act, shall be conclusive among the parties thereto and the extent of use so determined shall be prima facie evidence of rights to the amount of water and priorities so fixed as against any person not a party to said decree."
The filing of exceptions to the referee's report and other matters of procedure are governed by § 7373 [P.C. § 7225], which provides for the entry of
". . . a decree determining the rights of the parties according to the evidence and the report of the state hydraulic engineer, whether such parties have appeared therein or not."
These sections seem to contemplate the entry of a decree determining the rights of the parties, whether those rights depend upon a judgment entered in prior litigation, any prior private contract, or the rights of the parties as disclosed by the evidence and the report of the engineer. A dismissal of the proceeding instituted by the department, for the reason that private parties have parceled out the waters among themselves by their own contract, does not appear to have been within the contemplation of the legislature. Probably, instances may occur in which, for one reason or another, *Page 639 
the proceeding may be dismissed, but this case does not fall within any such category.
In the case of West Side Irrigating Co. v. Chase, 115 Wn. 146,196 P. 666, this court considered the act and its history and the powers of the hydraulic engineer thereunder. It was held that the act vested very broad powers in the engineer.
The general theory of state water codes is discussed in Kinney on Irrigation and Water Rights (2d ed.), the text contained in volume 3, § 1367, being of interest in this connection.
The supreme court of the United States, in the case ofPacific Live Stock Co. v. Lewis, 241 U.S. 440, 60 L.Ed. 1084,36 S.Ct. 637, upheld the constitutionality of the water code of Oregon, and discussed the matter of proceedings instituted thereunder.
In addition to the four landowners above named, and the Federal Land Bank of Spokane, several persons were named as parties to this proceeding, most, if not all, of whom made default. The Federal Land Bank of Spokane appeared, but has not participated in this appeal.
The referee filed an extensive report, referring to the plan or map of the locality under investigation filed in the proceeding by the department, together with a statement of
". . . general physical and hydrographic findings for use in connection with the determination of the relative rights to the use of the waters of Crab creek and its tributaries between Sylvan lake and Odessa."
The report covers many matters concerning the land and the use and duty of the water in connection therewith, together with a statement of the "rotating agreement" of June, 1924, signed by the property owners above named. The referee stated as his opinion that, while there was no doubt but that a system of rotation *Page 640 
should be followed, the 1924 agreement did not result in an equitable distribution of water, and that priorities should be established
". . . in order that Crab creek as a whole may be properly regulated at such time as rights on the entire stream will have been adjudicated and conditions warrant such action."
The referee then stated his findings, placing the landowners in different classes, and declaring that,
"Subject to the total quantity of water set forth in the foregoing schedule, all waters of Crab creek between Sylvan lake and Odessa belong to the public and are subject to appropriation."
By way of conclusions of law, the referee, among other matters, concluded "that the diversion or gross duty of water shall not exceed 1.0 c.f.s. for each 50.0 acres of land," and stated his opinion as to the rights of the different classes to the administration of the water.
The trial court entered no findings of fact, stating, however, in the decree dismissing the action,
". . . that the rights to the waters of Crab creek and its tributaries in that part of the stream between Sylvan lake and Odessa, Washington, have all been settled and determined by that certain contract dated June 9, 1924, and recorded in Book `G' of Miscellaneous Records at page 79 in the office of the auditor of Lincoln county, Washington, and that the court has no jurisdiction in a proceeding of this kind to modify said agreement or the rights of the parties thereto."
Respondent property owners contend that the decree should be affirmed, arguing that the trial court correctly held that the contract of June, 1924, completely settled all rights sought to be affected by the agreement, and that no other rights are involved in this proceeding. Appellant state of Washington contends that, as the water rights upon the portion of Crab creek with which we are concerned have never *Page 641 
been adjudicated, the state department of hydraulics could successfully initiate and maintain such a proceeding as this; that, notwithstanding the rotation agreement of the four landowners, the court should have entered a decree establishing the jurisdiction of the department, at least to some extent; and that the proceeding should not have been dismissed. Appellant Dobson, while expressly disclaiming any attack whatever upon the rotation agreement, likewise contends that the state department has nevertheless the right to establish and maintain jurisdiction over the waters of the creek; that, if at any time the creek contains public water, the department has jurisdiction over the same; and that, in any event, as beneficial use is the base and limit of water rights in this state, the court should have determined such use and the resulting rights, notwithstanding the contract.
As none of the four landowners concerned wages any attack on the rotation agreement which they signed in 1924, and as it does not appear that any third party presented in the court below any claim contrary to or conflicting with that agreement, no question concerning the validity of that contract is presented. Nothing in the record, however, indicates that the state, through its department of hydraulics, has been deprived of the right to make a survey and examination of the portion of Crab creek between Sylvan lake and Odessa, as the state undoubtedly has basic jurisdiction over the waters in the creek, even though the four landholders who are parties to this appeal, by acquiescing in the rotation agreement, present no question as between themselves which requires judicial determination. Evidently, the state went to much expense in assembling the data which was the subject matter of the referee's report, and the facts that, at this particular time, no *Page 642 
party to the rotation agreement attacks the same, and no outside party seeks to establish any right to any portion of the water, can no wise deprive the superior court of jurisdiction to establish by judicial decree certain facts which the department of hydraulics contends should be so established, even though such judicial decree may have little or no present effect upon the actual use of the water, or any portion thereof.
The work which the department has performed at considerable expense should not be wasted, but should be established for possible use in the future. Certainly, if at any time there is public water in the creek, the department is concerned therewith and with any use to which it may be put. The court did not find that the creek never contains any public water, and this is a proper matter for judicial inquiry in this proceeding. Rem. Rev. Stat., §§ 7370 and 7373, supra, clearly provide for the entry of a decree in such a proceeding as this, whether the decree shall determine or merely declare certain rights of the parties as they may exist at the time of the trial.
In the case of State ex rel. Roseburg v. Mohar, 169 Wn. 368,13 P.2d 454, this court held that, as between private parties, the enforcement of water rights existing at the time of the adoption of the water code may be sought by a direct action in the superior court. At the same time, the right of the state to enact its water code and of the officers of the state to proceed thereunder has been repeatedly upheld.
In re Waters of Doan Creek, 125 Wn. 14, 215 P. 343, it appeared that a private party had sought the intervention of the department of hydraulics, asking for the determination of the relative rights to the use of the waters of Doan creek. Thereafter, a proceeding was instituted under the provisions of the water code, notice was given, and a hearing was had. After taking *Page 643 
much testimony, the referee submitted his report, which was not adopted by the trial court, which established a schedule of rights based upon a different theory. On appeal by the state from the judgment of the superior court, this court held that, while the water code saved all existing rights in land and water, the state nevertheless, in the exercise of a supervisory control, has some rights in connection with the administration of the use of the water for the public welfare, according to the various and definite rights of all parties to the water. The duty of the supervisor of hydraulics in such a case was pointed out.
The duties of the department of hydraulics and the jurisdiction of that department under the water code were recognized in the cases of Hunter Land Co. v. Laugenour,140 Wn. 558, 250 P. 41, and In re Thompson Creek, 149 Wn. 169,270 P. 303.
Respondents contend that the only question presented on this appeal is whether or not, in an action of this kind, the court has power to set aside or modify such a contract as the compromise or rotation agreement entered into between the four landowners at present using the waters of Crab creek, in the absence of allegation or proof of any fraud or mistake in making the agreement. While it is probable that, under our liberal procedure, a trial court might allow private parties to try out, in such a proceeding as this, questions of their mutual concern, no such matter is here presented. As above stated, the trial court dismissed the proceeding for the reason, as stated in the decree, that the rights to the waters of Crab creek in that part of the stream with which we are here concerned had all been settled and determined by the rotation agreement, and that the court had no jurisdiction in the pending proceeding to modify the agreement or the rights of the parties thereto. The trial court made no finding *Page 644 
to the effect that Crab creek never contained any public or surplus water, or that such public water, if any ever existed, could be put to no beneficial use. Manifestly, some jurisdiction pertains to the department of hydraulics concerning the water here in question, even though the four landowners above referred to have established some or all of their mutual rights by a written contract.
We are convinced that the trial court erred in dismissing the proceeding. The record clearly indicates that, as between the four landowners, the rotation agreement which they entered into several years ago, and have since observed, should be confirmed, notwithstanding any criticism of the agreement contained in the report of the state department of hydraulics. Appellant Dobson expressly disclaimed any attack upon this agreement, no other party to the agreement has questioned its validity, and no third party has attacked it. Upon the record before us, the court should, as between the parties thereto, confirm the contract, and reject all findings made by the referee in derogation of the rights of the four landowners established as between themselves by the rotation agreement.
The state, through its department of hydraulics, has still some basic jurisdiction in the premises, even though it may not interfere with the use of the water by the parties to the rotation agreement in accordance with that contract. The underlying jurisdiction of the state and its control over such waters as Crab creek always persists, and in the case at bar requires that further proceedings be had herein. This is true, even though the court does no more than find from the evidence that certain physical facts exist, and that the creek contains water which is being appropriated to some beneficial use. Of course, if the court be of the opinion that the state's maps and the statements made *Page 645 
by its officers are not true and correct, they should not be approved. If the court come to such an opinion, the same can be expressed in an appropriate finding.
The judgment appealed from is reversed, and the cause remanded with instructions to proceed in accordance with the views herein expressed.
STEINERT, C.J., MILLARD, and ROBINSON, JJ., concur.