[No. 27985. Department Two. October 28, 1940.]

ALBERTA LOW THOMPSON *et al., Respondents,* v.
MARTHA SHORT *et al., Appellants.*[1]

[1]Reported in 106 P. (2d) 720.

*G. S. Bond* and *Judd D. Kimball,* for appellants.

*W. G. Coleman* and *John C. Tuttle,* for respondents.

JEFFERS, J.—This action was brought by Alberta Low Thompson and Herrick B. Thompson, her husband, for the purpose of obtaining an injunction permanently restraining Martha Short, William F. Dolling and wife, and Al Moultrop and wife, defendants, from cutting off, interfering with, or molesting in any way the rights of plaintiffs in and to the use of the water from Little Mud creek, or the ditch (known as the Short ditch) which diverts the water from the creek.

Plaintiffs' claimed rights, as shown by their complaint, are based upon a certain contract made and entered into in April, 1917, by and between William Dean Goodman, Myrtle Goodman French and H. J. French, her husband, predecessors in interest of plaintiffs, and James E. Short and Martha E. Short, husband and wife, predecessors in interest of defendants.

Defendants filed an answer, and by such answer defendant Martha Short disclaimed any interest in or to the water or lands affected by this controversy. As

the trial court dismissed Mrs. Short from the proceeding, and no error is claimed because of such action, no further reference will be made to this defendant. The other defendants denied generally that plaintiffs were entitled to any injunctive relief, and alleged affirmatively that all the rights of the parties to this action were adjudicated and determined by a decree entered on September 12, 1928, in a proceeding brought by the state supervisor of hydraulics of the state of Washington, for the purpose of adjudicating the water rights of the Walla Walla river and its tributaries, being cause No. 19075 of the superior court records of Walla Walla county.

The matter came on for hearing before the court on May 19, 1939; and thereafter, on June 22, 1939, the court entered a decree granting to plaintiffs the relief prayed for in their complaint. Motion for new trial was made by defendants, and formal order denying same filed on November 17, 1939. Notice of appeal by defendants was served and filed on December 15, 1939.

Respondents have moved to strike the statement of facts filed by appellants, and dismiss the appeal for want of a proper statement of facts, or one which was filed within the ninety-day period.

The record shows that a proposed statement of facts was filed on February 14, 1940, from which was inadvertently omitted, by the court reporter, the written memorandum decision of the trial court; that, on February 19, 1940, it was stipulated by counsel for the respective parties that the proposed statement, as filed, could be certified by the trial judge as a true statement of facts, the above omission apparently not having been noted; that thereafter the clerk of the court sent the proposed statement to Honorable M. E. Jesseph, at Colfax, for his signature, he having tried

the case. Judge Jesseph, on March 8, 1940, signed the certificate to the proposed statement, but above his signature he inserted: "Except judge's memorandum opinion which is to be added hereto." Judge Jesseph then returned the statement and wrote letters to counsel, informing them of his action. When counsel for appellants received his letter from Judge Jesseph, he instructed the court reporter to add the trial court's memorandum decision, which was done, and this was the only change made.

While it may have been a little irregular for the trial court to sign the certificate before the statement was complete, undoubtedly this was done to save time, and with the thought in mind that there could be, and would be, no objection to merely adding the memorandum decision, which our rules require to be made a part of the statement of facts. We are of the opinion the trial court had a perfect right to require that such addition be made to a proposed statement of facts filed within the statutory period, even though such addition be made after the expiration of the ninety-day period. See *State ex rel. Simcoe Sheep Co. v. Superior Court,* 2 Wn. (2d) 594, 98 P. (2d) 977.

We are entirely in accord with, and do not desire to be understood as in any way departing from, the rules announced in *McCrabbe v. Jones,* 171 Wash. 326, 17 P. (2d) 860; *Puget Sound Bulb Exchange v. St. Paul Fire & Marine Ins. Co.,* 174 Wash. 691, 26 P. (2d) 84; *Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123, and the other cases cited by respondents, which hold that a proper statement of facts must be filed within the ninety-day period; that this is jurisdictional; and that the time cannot be extended by the court or by stipulation of the parties. *Pattison v. Walker,* 2 Wn. (2d) 62, 97 P. (2d) 160, 100 P. (2d) 20. There is

nothing, in our opinion, in the cited cases which conflicts with our holding herein.

The motion to strike the statement of facts will be denied.

In 1917, James E. Short and wife were, and for some time prior thereto had been, the owners of all the land in section 8, township 6, N. R. 34, E. W. M., now owned by appellants; and at that time, William Dean Goodman, Myrtle Goodman French, and H. J. French, her husband, were the owners of the north half of section 16, township 6, N. R. 34, now owned by respondents. At the time of the instigation of the suit to adjudicate the waters of the Walla Walla river and its tributaries, in 1925, the land in section 8, hereinbefore referred to, belonged to appellants Dollings, the Third National Bank of Walla Walla, Adalaide Short, Susan Short, and Oscar N. Short; and at that time, the land in section 16, now belonging to respondents, belonged to Grant Low, father of Mrs. Thompson.

In 1914, the Shorts began the construction of a ditch, by means of which water was to be taken from Little Mud creek and conveyed to the lands of the Shorts (lands now owned by appellants). This ditch was completed in 1917. At the time of the construction of the ditch, in order to get to the lands then owned by the Shorts in section 8, it was necessary to go through the land in section 16 now owned by respondents, but at that time owned by William Dean Goodman, Myrtle Goodman French, and H. J. French.

In April, 1917, James E. Short and wife, and William Dean Goodman, Myrtle Goodman French, and H. J. French, her husband, entered into a contract relative to the use of the water flowing in the Short ditch and relative to the rights of the parties in the ditch. This contract is not as definite as it might be, but it seems to have contemplated that the parties would be joint

owners in the ditch. As to the water, the contract provides:

"The second parties to have the right to use all flood water that is obtainable, water not used by the first parties and riparian owners above, including the waters reserved by the said Edward Hoon, and Lane Hoon, and is further entitled to use any surplus water at any time that is not used by the said first parties and riparian owners, including said Hoons. Intending that the second parties can take and use any water obtainable that can be acquired for said ditch, that is not diverted by the said first parties and said other riparian owners, or lawful claimants."

While the lands here in question are riparian to Little Mud creek in Washington, no water from Little Mud creek had been used for irrigation prior to the construction of the Short ditch.

After the contract above referred to was executed and the Short ditch completed, respondents' predecessors began to use the water from the Short ditch to irrigate, starting with about ten acres and increasing the amount to thirty acres. In 1936, respondents' predecessors put an additional fifty acres of pasture into grain and irrigated it. The Shorts irrigated about forty acres the first year, and at the time the water adjudication was instituted in 1925, appellants and their predecessors had increased the irrigated area to about 338 acres.

It does not appear but that there was ample water for all parties up to 1925; and so far as the record shows, there had been no determination or agreement of how much water the respective parties under the contract were entitled to.

On September 15, 1925, the state supervisor of hydraulics commenced an action to adjudicate the waters of the Walla Walla river and its tributaries,

pursuant to the provisions of Rem. Rev. Stat., §§ 7351-7400, commonly known as the water code of 1917.

Little Mud creek is one of the tributaries of the Walla Walla river. The Short ditch takes the water out of Little Mud creek just over the line in Oregon, on what was known as the Hoon land. The diversion was apparently made at this point to get a gravity flow to the lands of appellants.

In the water adjudication, all the parties then owning land in section 8 were served with summons, and appeared and set up their claims, as required by the statute. Grant Low and wife, the then owners of the land in section 16 now owned by respondents, were made parties defendant, but did not appear in that proceeding, and were accorded no rights by the decree entered therein.

It appears that the 1917 contract hereinbefore referred to was in evidence in the water adjudication and was considered along with the other evidence bearing on the respective rights of the claimants.

In the water adjudication, appellant Dolling and the predecessors in interest of appellant Moultrop were accorded a certain amount of water in Little Mud creek, diverted through the Short ditch; and, as we have stated, no rights to water in Little Mud creek, or to the water in the Short ditch, or to the ditch itself, were awarded to Grant Low, the predecessor in interest of respondents.

It does not appear that appellants have ever attempted to obtain more than the quantity of water awarded to them by the decree, or that the water master has allowed them to take more than that amount. It does appear that appellants, at all times since the decree was rendered, have taken the amount awarded them by the decree, without objection by respondents or their predecessors in interest, until this

suit was instituted. However, it does not appear but that, up until 1938, there was water enough in the Short ditch for all parties, so that appellants had no occasion to insist on the amount of water awarded them under the decree as against respondents.

During the irrigation season of 1938 and 1939, the water was low in the ditch, and appellants were unable to get the full amount of water awarded to them by the decree, due apparently to the fact that tenants on the Low land were taking water from the ditch before it arrived at the lands of appellants in section 8. Appellants complained to the water master, and he, acting on the authority of the water decree, turned off the water from the land of respondents until appellants could get the amount of water to which they were entitled under the decree. This action was then started by respondents, and from the decree entered, the appellants have appealed.

Appellants make the following assignments of error: (1) That the trial court erred in denying appellants' motion for new trial herein and in denying appellants' motion for nonsuit; (2) that the court erred in finding that the decree of the superior court of Walla Walla county, cause No. 19075, was not binding on Grant Low as a party to that suit, because he was not personally served with process therein, and in finding that the sheriff of Walla Walla county was derelict and indifferent in performing his duty relative to the serving of such process; (3) that the trial court erred in allowing the decree of the superior court of Walla Walla county, in cause No. 19075, to be collaterally attacked herein, and in failing to find that the decree was *res judicata* of the rights of respondents as claimed herein and a bar to this action; (4) that the court erred in enjoining appellants from doing a lawful act, that is, in complaining to the water master that they were not

receiving the full amount of water allowed to them under the decree; (5) that the court erred in holding that the agreement of 1917 did fix the water rights of appellants as inferior to respondents and immune to the decree of adjudication.

It is first contended by appellants that this is a collateral attack upon a valid, existing judgment, binding on Grant Low, rendered in the water adjudication.

The record in the water suit shows that summonses were issued and filed on September 15, 1925. October 26th following, the then sheriff of Walla Walla county filed a return, wherein he certified that he received the summonses on September 16, 1925, *and after diligent search and inquiry* was unable to find certain defendants, among whom were Grant Low and Jane Doe Low.

Rem. Rev. Stat., § 7366 [P. C. § 7218], provides in part:

"Service of said summons shall be made in the same manner and with the same force and effect as service of summons in civil actions commenced in the superior courts of the state. If the defendants, or either of them, cannot be found within the State of Washington, of which the return of the sheriff of the county in which the proceeding is pending shall be prima facie evidence, upon the filing of an affidavit by the state supervisor of hydraulics, or his attorney, in conformity with the statute relative to the service of summons by publication in civil actions, such service may be made by publication . . ."

The requirement of this section was met by the return of the sheriff and the affidavit of B. B. Adams, attorney for the plaintiff. The record further shows that an order was made directing service of summons by publication upon the defendants not found, including Grant Low and Jane Doe Low, and that such publication was made as directed. The record also shows

that the referee made and filed his report, which included findings of fact and conclusions, as required by the statute, and that a decree was thereafter entered, which included and made a part thereof the findings and conclusions of the referee only.

It thus appears from the record in the water adjudication that every step necessary to give the court jurisdiction was taken, and the court in its decree stated:

"That it appears to the Court from the records and files in this case that all the defendants herein have been duly and regularly served, personally or by publication, with summons in this action in all respects according to law."

In the instant case, Grant Low was permitted to testify that he was not served with summons and complaint of any kind in the water adjudication, and knew nothing of the suit, except by rumor. It appears that Grant Low did not live on the land at the time of the water suit, but lived in Dayton, in Columbia county; and that he leased the land here involved, and did not know whether his tenants were served with summons in the water suit or not. While Grant Low at the time of this action is a man of some prominence in Columbia county, being one of the county commissioners, it does not appear that he was prominent in 1925.

Ed Short was permitted to testify as follows:

"Q. Mr. Short, do you know anything about the summons and complaint handed to the sheriff at the time this water suit was under way, as to Grant Low? A. When the sheriff came out there he named a stack of them and said they had not been served, especially Grant Low. . . . MR. KIMBALL (attorney for appellants): Now I object because it is a collateral attack on an adjudication of a court of general jurisdiction. THE COURT: The testimony will be admitted

to show whether or not the court had jurisdiction of Grant Low. MR. COLEMAN (attorney for respondents): I do not attack this decree, but I want to show that it was entered,— THE COURT: To show the court had no jurisdiction of Grant Low or his wife, is that it? MR. COLEMAN: Yes. . . . Q. What happened to that summons, was there one left with you for Grant Low? A. His name was given for one of them, *I think.* Q. It was a printed form? A. Yes. Q. Did you ever hand anything to Grant Low in the way of a summons or complaint? A. I never seen Grant Low at all until after the adjudication was over. I never met him to give it to him." (Italics ours.)

Upon the above showing, the trial court found that Grant Low had never been served with summons and complaint or any process in the water adjudication, and that he had no notice that such suit, involving his land and water rights, was pending; that the sheriff of Walla Walla county was derelict and very indifferent in performing his duties relative to the service of defendant.

■ A collateral attack is defined in 34 C. J. 521, § 827, as follows:

"A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree; an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings. In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral."

In *Hanna v. Allen,* 153 Wash. 485, 279 Pac. 1098, the above definition of collateral attack was approved, the opinion further stating:

"A collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.*"

The above definition is cited with approval in *Treosti v. Treosti,* 168 Wash. 672, 13 P. (2d) 45.

We are satisfied that the instant action is not a direct attack on the judgment in the water adjudication, but is an attempt, in a collateral proceeding, to impeach the judgment in the former case by showing matters *de hors* the record. In other words, the trial court allowed the former judgment to be collaterally attacked.

The question then arises as to whether or not the trial court properly allowed the judgment in the water case to be impeached by matters *de hors* the record, and when we refer to the "record" we mean the record as made in the water case, which was before the trial court in the instant case. We find the rule announced in 15 R. C. L. 893, § 373, as follows:

"According to the common law rule, adhered to at the present time in most of the states, the presumption in favor of the jurisdiction of a court of general jurisdiction is conclusive and its judgment cannot be collaterally attacked where no want of jurisdiction is apparent of record. Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So where the judgment contains recitals as to the jurisdictional facts these are deemed to import absolute verity unless contradicted by other portions of the record. Consequently such

a judgment cannot be collaterally attacked in courts of the same state by showing facts aliunde the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it. The validity of a judgment when collaterally attacked must be tried by an inspection of the judgment roll alone, and no other or further evidence on the subject is admissible, not even evidence that no notice. had been given."

See, also, 34 C. J. 511, § 815. ·

We have consistently held, since the decision in *Rogers v. Miller,* 13 Wash. 82, 42 Pac. 525, 52 Am. St. 20, that, where the court rendering a judgment has jurisdiction of the subject matter and adjudges that jurisdiction has been properly acquired over the person of the defendant, where there is nothing in the record to contradict it, such adjudication is as conclusive as that upon any other question in the case, when collaterally attacked. See *Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757; *Hanna v. Allen, supra.*

In the *Rogers* case, *supra,* we quoted with approval from *Munch v. McLaren,* 9 Wash. 676, 38 Pac. 205, as follows:

" 'Every fact not negatived by the record will be presumed in aid of the judgment, and it will only be held void when it affirmatively appears from the record that the court had no jurisdiction to render it.' "

We stated in *Scott v. Hanford,* 37 Wash. 5, 79 Pac. 481:

"Where it appears on the *face of the record* that no service has been made on the defendant, and the court must know, from a bare inspection thereof, that the judgment is void for want of jurisdiction over the person of the defendant, it will set aside the judgment, on the motion of the defendant or of any one injuriously affected by it; but, when the judgment is valid on its face, it is not thus subject to attack. To set aside a judgment for matters *de hors* the record, it must be

attacked by some one of the *statutory methods for the vacation of judgments,* and within the time limited by statute, or by a suit setting up some equitable ground for its vacation." (Italics ours.)

See, also, *Rowe v. Silbaugh,* 96 Wash. 138, 164 Pac. 923; *Globe Const. Co. v. Yost,* 169 Wash. 319, 13 P. (2d) 433.

There is no question but that the record in the water case shows valid service by publication upon Grant Low and wife, and that the judgment is valid on its face, and there is nothing in the record to contradict the finding of the court that Grant Low and wife were regularly served with summons according to law.

It is the contention of respondents that fraud affecting the jurisdiction of the court which renders a judgment may be shown in a collateral proceeding to impeach such judgment. While in one or two of our cases some statements may be found which seem to intimate that such a showing may be made in a collateral proceeding, we are satisfied that in this state, under the rule announced in *Peyton v. Peyton, supra,* and under the general authority cited, a judgment, rendered in a proceeding where the court had jurisdiction of the subject matter, and where the court has adjudged that jurisdiction over the person of the defendant has been properly acquired, and where there is nothing in the record to contradict the judgment, cannot be attacked in a collateral proceeding by matters *de hors* the record, even for fraud in procuring the judgment by parties to such judgment or those claiming by, through, or under them. Such a showing might, in a proper case, be made in a direct proceeding.

In the instant case, we are also satisfied there was no fraud shown on the part of appellants or their predecessors in interest in procuring the judgment in

the water adjudication; nor does it, in our opinion, appear that the sheriff of Walla Walla county acted fraudulently in the matter of attempting to obtain service on Grant Low and wife. We are satisfied that, even in a direct attack, the showing made herein as regards the sheriff would not have been sufficient to overcome the verity of the return filed.

Respondents contend, however, that the water code does not contemplate that existing rights will or can be affected by a decree rendered pursuant to the provisions of such act; that, consequently, the rights of respondents under the 1917 contract could not be, and were not, affected by the decree above referred to; and that, if that was the effect of such decree, it was beyond the jurisdiction of the court, and void. The trial court, as shown by its memorandum opinion, seemed also to be of the view that, if the effect of the decree referred to was to take from respondents any rights to which they were entitled under the 1917 contract, the decree was a nullity and void, as being in excess of authority given by the water code.

In *Peyton v. Peyton, supra,* we find the following quotation from Brown, Jurisdiction, § 1a:

" 'Jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial.' "

The contention of respondents that the court did not have jurisdiction to enter a decree in the water adjudication affecting or destroying their rights under the 1917 contract, is largely founded on Rem. Rev. Stat., § 7351 [P. C. § 7203], which provides:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise. They shall, however, be subject to condemnation as provided in section 7354 hereof, and the amount and priority thereof may be determined by the procedure set out in sections 7364 and 7377 inclusive hereof."

In *West Side Irrigating Co. v. Chase*, 115 Wash. 146, 196 Pac. 666, after referring to the history of irrigation in this state and the 1917 water code, we stated:

"This code appears to be broad enough to include almost any conceivable right with reference to irrigation, and to provide an inexpensive and ready manner of settling all disputes concerning such matters. We have no doubt that it is sufficiently broad to authorize control by the state hydraulic engineer of the rights which have been adjudicated to the appellant. . . .

"The act is long and complete and we cannot here further quote from it. That it authorizes the hydraulic engineer to control all of the waters of the state for irrigation purposes, including those which had theretofore been lawfully appropriated or acquired, we have no doubt. . . .

"The water code of this state authorizes the engineer to enforce the 'rights' of all water users whenever and howsoever those rights may have been determined or adjudicated; and, since appellant's rights have been adjudicated by competent courts, there is no reason why the engineer should not have power and authority—and in fact it is made his duty—to enforce them."

In *Wilson v. Angelo,* 176 Wash. 157, 28 P. (2d) 276, we find the following statement relative to the purpose of the water code, and the effect of a judgment rendered thereunder:

"Taking the water code as a whole, its very purpose is to settle and determine all rights and priorities to the use of the water under investigation. By its terms, the judgment is designed to be a final adjudication of the rights of all parties. Claimants are required to file verified statements of the nature of the right or use on which their claim is based, and the amount of water claimed and used. Rem. Rev. Stat., § 7367. And a defendant, served with summons in the proceedings, who defaults is 'estopped from subsequently asserting any right to the use of such water embraced in the proceeding, except as determined by such decree.' Rem. Rev. Stat., § 7375."

In *In re Crab Creek,* 194 Wash. 634, 79 P. (2d) 323, after referring to the provisions of the water code, we stated:

"These sections seem to contemplate the entry of a decree determining the rights of the parties, whether those rights depend upon a judgment entered in prior litigation, any prior private contract, or the rights of the parties as disclosed by the evidence and the report of the engineer."

The water in the Short ditch is taken from Little Mud creek. The flow of this water is claimed for use upon certain land; and we are satisfied that, in this state, such a claimed right to the flow of water, whether in its natural state or in an artificial channel, is appurtenant to the land upon which it is used, and is considered as real property. *Madison v. McNeal,* 171 Wash. 669, 19 P. (2d) 97. Such claimed right is subject to adjudication under the water code, whether the right claimed is to the flow of water in a ditch, such as the Short ditch, by which the water is diverted, or in the stream itself. It is the right to the

flow of the water, considered as appurtenant to the land, that is being adjudicated.

We are clearly of the opinion that, under the water code, the court has jurisdiction to adjudicate the amount of water to which all claimants on the stream being adjudicated are entitled, and the priorities as between such claimants; that, in order that this may be done, all defendants legally served with summons in such proceedings must appear and set up their claims, giving the basis thereof, to the end that a final adjudication may be had of all who claim any right to the water in such stream; and that any defendant who has been legally served with summons, but fails to appear and set up his claim, is, by the provisions of Rem. Rev. Stat., § 7375 [P. C. § 7226], estopped from asserting any right to the use of such water, except as determined by such decree.

We are of the opinion that, when the state hydraulic engineer filed with the superior court the statement and map, as provided in Rem. Rev. Stat., § 7365 [P. C. § 7217], the court obtained jurisdiction of the subject matter; and it further appearing from the record that there was valid service of summons by publication on Grant Low and wife, we are of the opinion the court had jurisdiction to make and enter the decree which it is sought to attack in this proceeding. As we see it, the court did no more than fix the amount of water in Little Mud creek, diverted by the Short ditch, to which appellants and their predecessors in interest were entitled, and determine that appellants and their predecessors had a prior right to the amount of water awarded.

We are therefore of the opinion the trial court was in error in allowing the decree in the water adjudication to be collaterally attacked by matter *de hors* the record. We are further of the opinion that the judg-

ment in the water suit is *res judicata* of the question raised by respondents in the instant case, and is a bar to this action.

■ It is further contended by respondents that the referee recognized that there were existing agreements, and stated that such agreements should be recognized where they did not conflict with outside rights. While it is true the foregoing statement is found in the referee's report, no mention being made of any specific contract, the decree made a part thereof only the findings and conclusions of the referee, and such findings contain no reference to existing contracts.

We again desire to call attention to the case of *Wilson v. Angelo, supra,* wherein we stated:

"Of course, the court may adopt portions of a referee's report by reference, and thereby make them findings of the court. *State ex rel. Bloom v. Superior Court,* 171 Wash. 536, 18 P. (2d) 510. But the findings of the referee in such cases will become findings of the court only to the extent that there appears a clear intention to make them such."

Respondents cite *Pate v. Peterson,* 107 Wash. 93, 180 Pac. 894, and *State ex rel. Roseburg v. Mohar,* 169 Wash. 368, 13 P. (2d) 454, in support of their contention that the water code does not purport to affect existing rights. *Pate v. Peterson* simply holds that the water code did not divest the court of jurisdiction to try and determine contested water rights, of which proceeding the court acquired jurisdiction prior to the taking effect of the water code. The *Roseburg* case, *supra,* holds that, as between private parties, a court of equity has *jurisdiction* to entertain suits for quieting title to the use of waters and has plenary power to give redress in proper cases where there has not been a previous adjudication, either by an administrative

board of the state or by a court having concurrent jurisdiction.

Respondents also cite *Farm Inv. Co. v. Carpenter,* 9 Wyo. 110, 61 Pac. 258, 87 Am. St. 918, 50 L. R. A. 747, as sustaining their contention that a defendant in a water adjudication proceeding who failed to present a claim of priority is not estopped from later asserting such claim. Without further reference to the cited case, we are of the opinion that, in view of our decision in the case of *Wilson v. Angelo, supra,* the case is not applicable herein.

Other cases have been cited by respondents, which, in view of the conclusion reached on what we have considered the controlling questions, we do not consider applicable herein.

The judgment of the trial court is reversed, with instructions to dismiss the action.

BLAKE, C. J., BEALS, STEINERT, and DRIVER, JJ., concur.

