[No. 45010.   En Banc.   March 8, 1979.]

EDWARD J. McLEARY, *Respondent*, v. THE DEPART-
MENT OF GAME, ET AL, *Appellants*.

*Slade Gorton, Attorney General,* and *J. Lawrence Coniff, Jr.,* and *David A. Bateman, Assistants,* for appellants.

*Collins & Hansen,* by *Clifton W. Collins* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow (Charles A. Kimbrough,* of counsel), for respondent.

*Slade Gorton, Attorney General,* and *Charles B. Roe, Jr.,* and *Robert E. Mack, Assistants,* amici curiae.

UTTER, C.J.—The Department of Game appeals from an adverse judgment by the Superior Court. That court enjoined establishment of a fish hatchery by Game upstream from one operated by respondent Edward J. McLeary until a permit is issued for Game's proposed hatchery by the Department of Ecology. In issuing its injunction the court rejected Game's claim of a water right to supply its planned hatchery independent of the permit system. The trial court additionally granted McLeary judgment on other claims between the parties. We affirm the action of the trial court in all respects.

There are four issues for decision by this court: (1) does the Department of Game have a right independent of the permit program administered by the Department of Ecology to use water appurtenant to its land for its proposed hatchery; (2) is the issuance of an injunction supported by the law and evidence; (3) does the evidence support a determination that a refrigeration unit removed from Game's property by McLeary was not a fixture; and (4) is the award of costs to McLeary correct in its inclusion of a premium on the preliminary injunction bond against Game.

The arena for the dispute is a unique creek site located in Grant County. Rocky Ford Creek arises out of the ground on land now owned by the Department of Game. The land was previously owned at all times relevant to this suit by W. M. Clapp and his heirs. McLeary operates his hatchery on leased property approximately 1/2 mile downstream from Game's land.

In 1921 Game's property was owned by Clapp, an attorney. At that time a suit for a general water rights adjudication, pursuant to RCW 90.03.110, was filed in Superior Court to adjudicate all water rights in Crab Creek and its tributaries, including Rocky Ford Creek. A decree was entered in 1924 determining all the rights then existing on those creeks. The decree stated in part, "that subject to existing rights as set forth in the above and foregoing schedule all water of Crab Creek and Moses Lake belongs to the public and is subject to appropriation in the manner provided by law."

In the adjudication proceeding, Clapp filed a statement claiming riparian water rights for irrigation and fish hatchery purposes. He was granted only a right to 4 cubic feet per second for irrigation. No subsequent permit for hatchery purposes has been issued on that property.

In 1945 McLeary leased the Clapp property to develop a fish hatchery. McLeary rebuilt and improved a small hatchery at the Clapp site when he moved on to the property in the 1940's. In the early 1960's McLeary added to the existing facilities in a manner which required the use of substantially increased quantities of water. He then discovered that there was no water right for hatchery purposes on Clapp's property. In 1968 McLeary applied for a permit on the downstream property where his hatchery is now located. A water permit was granted by the Department of Ecology and he has developed a new facility where great numbers of fish are reared for commercial sale.

Game purchased the upstream property it now owns from Clapp and his heirs in 1971. This was the property previously leased by McLeary. Regarding this purchase, the trial court entered a finding, uncontested here, that Game "was not misled into buying the real property by any actions of the Plaintiff in using said hatchery, the State having actual knowledge in 1968 that no permit existed to use said waters for fish propagation purposes . . ." Game thereupon notified McLeary of its intent to establish its own hatchery on the upstream site.

McLeary, alleging operation of the Game hatchery would result in pollution and disease affecting his downstream hatchery, sought injunction of hatchery operations by Game unless and until a permit for water to serve such a hatchery is issued by the Department of Ecology. That agency, it is assumed, would permit no hatchery operation detrimental to McLeary's enterprise. Game asserted as an affirmative defense that under any of several theories it has a right to use creek waters for a hatchery without a Department of Ecology permit. Relevant to the alternative theories cited by Game, the court made the following unchallenged findings: "There was no use of said waters for fish propagation purposes by the Defendant Department of Game or its predecessors in interest prior to the effective date of the Water Code of 1917"; "That any acts of use claimed by the Defendant, Department of Game, to give a right of use by prescription occurred after the effective date of the Water Code of 1917"; and "That no statutorily required water right permits have been obtained from the State of Washington Department of Ecology by either the Defendant Department of Game or by any of its predecessors in interest, although several applications were made but were either abandoned or refused."

I

The pivotal question is whether Game has a right, independent of the statutory permit scheme found in RCW 90.03.010 *et seq.,* to use waters appurtenant to its land for its proposed hatchery. The cited permit scheme, first enacted in 1917, is now administered by the Department of Ecology. Under the scheme a process exists whereby all claimants to rights to use waters of a stream are joined in a single general adjudication to determine their rights. All evidence pertinent to the claims is heard, and a final decree is entered. The decree contains a schedule of rights established. All known and unknown persons claiming a right to divert water from a subject stream are affected by the adjudication. It was under this scheme that the Crab Creek adjudication took place.

Game notes that the 1917 code made the adopted procedure subject to preexisting rights, and argues that the "nonconsumptive" right to use creek waters for fish hatchery purposes, as contrasted to water use for irrigation purposes, are such preexisting rights which survive the 1924 decree. Further, Game argues the court's failure in 1924 to disavow such nonconsumptive rights in its predecessors, the Clapps, "inferentially perfected" its claimed right.

■ Appellants' attempted distinction between consumptive and nonconsumptive uses is not helpful and may not be used to narrow the scope of a general adjudication. First, the statute speaks of "diversion" of water for beneficial use. No distinction of "nonconsumptive" uses can arise from this language.

Further, a narrow construction of the nature of rights settled in an adjudication would serve no purpose. "Taking the water code as a whole, its very purpose is to settle and determine all rights and priorities to the use of the water under investigation. By its terms, the judgment is designed to be a final adjudication of the rights of all parties." *Wilson v. Angelo*, 176 Wash. 157, 160, 28 P.2d 276 (1934); *Thompson v. Short*, 6 Wn.2d 71, 87–88, 106 P.2d 720 (1940). *See also* Trelease, *Coordination of Riparian and Appropriative Rights to the Use of Water*, 33 Tex. L. Rev. 24, 59 (1954), and the cases cited therein. Whatever the description of a right, it is subject to confirmation in the general adjudication procedure provided in RCW 90.03.110 *et seq*. We decline to take any step which would diminish the scope of the rights affected by this procedure.

Whatever rights may have existed prior to entry of the 1924 decree were extinguished if not mentioned in that decree. RCW 90.03.220. When the decree failed to grant Game's predecessor in interest a water right for fish hatchery uses, it was a denial of that claim. As of 1924, the date of the final decree, Game's predecessor had no water right for fish hatchery purposes.

■ Game, having acquired no rights from actions of its predecessor prior to 1924, must look to events subsequent

to that date if it is to have any claim. In this regard Game claims that absent rights preexisting the permit system, it has rights acquired by prescriptive use of the water for hatchery purposes. Its contention is that through McLeary's use of the water for a commercial fish hatchery since 1945, the necessary elements of a prescriptive claim were established. The 1924 decree is a barrier to this claim. Its effect was to transfer to the state, for management through the appropriation permit procedure, those rights not otherwise allocated in the decree. Adverse possession may not be acquired against the state. *Commercial Waterway Dist. 1 v. Permanente Cement Co.*, 61 Wn.2d 509, 512, 379 P.2d 178 (1963). Thus no rights were acquired by prescription after the 1924 decree.

II

The trial court's issuance of an injunction prohibiting Game's operation of a fish hatchery and Game's establishment of public fishing upstream from McLeary must be examined within the framework of established general principles. Uncontested findings of fact establish that McLeary is a successful dealer in production of fish eggs and fish for commercial sale. The trial court also found, in finding of fact No. 18, challenged here, that McLeary

> requires the existence of a purity of water environment to assure against the introduction of any diseased or disease carrier fish, which could result in the loss of certification of his hatchery, which certification is required for the Plaintiff to make sales to many of its customers.
>
> That the Defendant in its hatchery operation is concerned with infestation and disease as they relate to the survival ratio of fish. The survival of their stock is primary, purity of the environment being secondary or incidental to their survival concern.

There is substantial evidence in the record to support these findings, as well as to support the trial court's determination that the various plans testified to by Game's witnesses to solve the potential water impurity problems caused by its hatchery were inadequate.

■ Findings of fact and conclusions of law show McLeary met his burden of establishing the existence of a clear legal or equitable right and an existing or prospective invasion of that right. The trial court, therefore, properly exercised its discretion in issuing its injunction.[1] *King County v. Port of Seattle*, 37 Wn.2d 338, 345, 223 P.2d 834 (1950).

The record does not support Game's assertion that McLeary is estopped from claiming equitable relief. An unchallenged finding of fact establishes that Game was not misled into purchasing the property by reason of McLeary's activities.

## III

■ Game claims McLeary wrongfully removed a refrigeration unit from the site of his earlier hatchery and was prohibited from doing so by the terms of his lease. The trial court found this claimed fixture was not attached to the building in which it was located. There is testimony in the record which would indicate it sat on bolts but was not attached to these bolts by nuts or other devices to anchor it to the building. As such it was not annexed to the realty or something appurtenant thereto and was not a fixture. *Department of Revenue v. Boeing Co.*, 85 Wn.2d 663, 667–68, 538 P.2d 505 (1975). Game's claim was properly rejected.

## IV

The award of costs against Game included the premium on the preliminary injunction bond. Game contends as a state agency it is immune from these charges. Although it is a general principle that costs against a state agency cannot

---

[1]Regarding the trial court's injunction of Game's establishment of sport fishing, we do not suggest that fishing regulations adopted by Game are by nature servient to the permit procedure administered by the Department of Ecology. Here sport fishing was established subsequent to issuance of a water permit to another user. We conclude that the operation of Game's regulations is subject to the equitable power of the courts. The trial court properly exercised that power in limiting fishing which it concluded would seriously injure McLeary's established use.

654

be awarded absent specific statutory authorization, the statute here in question provides such authorization. RCW 4.84.170.[2] The statute was amended to provide for such liability in 1959.

The judgment of the trial court and its award of costs is affirmed.

STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.

Reconsideration denied May 14, 1979.

---

[2]RCW 4.84.170 provides as follows:

"In all actions prosecuted in the name and for the use of the state, or in the name and for the use of any county, and *in any action brought against the state or any county*, and on all appeals to the supreme court or the court of appeals of the state in all actions brought by or against either the state or any county, *the state or county shall be liable for costs in the same case and to the same extent as private parties.*" (Italics ours.)