208 P.3d 1180 (2009)
Karl O. SMALE and Heather Smale, Respondents,
v.
NORETEP, a Washington State general partnership; Ronald Schultz and Jane Doe Schultz; Peter J. Poeschel and Jane Doe Poeschel; Defendants, and
Stillaguamish Tribe of Indians, Appellant.
No. 62349-4-I.
Court of Appeals of Washington, Division 1.
June 1, 2009.
Brian Collins, Tumwater, WA, Rob Smith, Seattle, WA, for Appellant.
Gregory Gilday, Stanwood, WA, for Respondents.
AGID, J.
¶ 1 The Smales sought to quiet title to property they claimed they had acquired through adverse possession and named Noretep, the original non-Indian owners, as defendants. After the Smales sued, Noretep deeded the disputed property to the Stillaguamish Tribe of Indians (the Tribe), and the Smales named the Tribe as a defendant. In its unsuccessful motion to dismiss, the Tribe claimed that tribal sovereign immunity deprived the superior court of subject matter jurisdiction. Because courts exercise in rem jurisdiction over the property subject to quiet title actions, our Supreme Court has held that transferring the disputed property to a tribal sovereign does not bar the continued exercise of subject matter jurisdiction over the property. Accordingly, we hold that the superior court's continuing jurisdiction over the land claimed by the Smales for the purposes of determining ownership does not offend the Tribe's sovereignty.

FACTS
¶ 2 The Smales initiated a quiet title action in Snohomish County Superior Court on May 14, 2007. They alleged that they acquired title through adverse possession to the portion of the neighboring property that had been on the Smales' side of the original fence line between the two properties. They named Noretep, a Washington State general partnership that owned the neighboring property at the time of suit, and Noretep's partners, Ronald Schultz and Peter Poeschel, as defendants. After the Smales filed suit, Noretep sold the property to the Tribe by statutory warranty deed dated December 26, 2007. The deed noted the pending quiet title action between the Smales and Noretep. The Smales added the Tribe as a defendant in an amended quiet title complaint.
¶ 3 The Tribe moved to dismiss the amended complaint for lack of jurisdiction under CR 12(b)(1). The trial court received briefing *1181 and heard oral argument before denying the Tribe's motion to dismiss "because the Court has jurisdiction over the land." The trial court certified the order denying the Tribe's motion to dismiss as a final judgment under CR 54(b), and this appeal followed.

DISCUSSION
¶ 4 The Tribe argues that tribal sovereign immunity bars actions to quiet title to land claimed by an Indian tribe and that the trial court should have dismissed the Smales' action for want of subject matter jurisdiction. Subject matter jurisdiction is a court's authority to adjudicate the type of controversy involved in the action.[1] The existence of subject matter jurisdiction over a claim involving a party asserting tribal sovereign immunity is a question of law, which we review de novo.[2]
¶ 5 Neither party disputes the basic principles of tribal sovereign immunity: Indian Nations are exempt from suit absent express waiver or congressional abrogation of their common-law sovereign immunity.[3] The Smales do not claim that the Tribe waived immunity. Instead, they argue that tribal sovereign immunity does not apply here because the court's assertion of jurisdiction was not over the Tribe in personam, but over the property in rem.[4] The Smales rely heavily on the authority of Anderson & Middleton Lumber Co. v. Quinault Indian Nation, which essentially controls this case.[5] In Anderson, a lumber company owned an undivided five-sixths interest in the surface estate of property within the borders of the Quinault Indian Reservation.[6] Ten people owned the remaining one-sixth interest as tenants-in-common at the time the lumber company sued to partition and quiet title to the property.[7] After the lumber company sued, the Quinault Indian Nation (Quinault Nation) acquired by statutory warranty deed the one-sixth interest from the 10 co-tenants.[8] The lumber company added the Quinault Nation as a defendant, and the tribe entered a special appearance to contest the court's jurisdiction.[9] The Washington Supreme Court held that "subsequent sale of an interest in the property to an entity enjoying sovereign immunity (Quinault Nation) is of no consequence in this case because the trial court's assertion of jurisdiction is not over the entity in personam, but over the property or the `res' in rem."[10]
*1182 ¶ 6 The Tribe makes multiple attempts to distinguish Anderson, none of which is compelling. First, it argues that Anderson was a case about quieting title in a partition action, and this case is about quieting title in an adverse possession action. The Tribe claims this distinction matters because partition has a "very different legal effect" from adverse possession. We agree with the Tribe's first premise that the two legal theories are distinct: an action to quiet title to and partition property determines the respective property interests of cotenants in common and divides the property among those legal owners according to their respective interests,[11] whereas an action to quiet title based on adverse possession determines who rightfully owns the land in question.[12]
¶ 7 In an attempt to explain why this distinction makes a difference, the Tribe argues that unlike an action to divide property between legal owners, a successful adverse possession claim would deprive the Tribe of its land. The Tribe cites Oneida Indian Nation of New York v. Madison County, where a federal district court rejected a New York county's effort to foreclose on properties owned by an Indian tribe, for the proposition that a suit to take tribal property cannot properly fall within a court's in rem jurisdiction.[13] But unlike the foreclosure action in Oneida, a successful adverse possession action here would not deprive the Tribe of its land. If the Smales adversely possessed the portion of the disputed property that originally fell within their fence line, their possession ripened into original title after 10 years of possession.[14] And if the Smales acquired title before the suit was filed and Noretep attempted to convey the land, Noretep had no title to convey. Thus, the Tribe never had any property to lose.[15]
¶ 8 United States v. Nordic Village, Inc.,[16] a case relied on by the Oneida court, does not help us resolve this case. In Nordic Village, the United States Supreme Court held that section 106 of the Bankruptcy Code did not waive the federal government's immunity from claims for monetary relief.[17] Although Nordic Village was not a case involving the exercise of in rem jurisdiction, the Court stated in dicta that "we have never applied an in rem exception to the sovereign immunity bar against monetary recovery."[18] *1183 Nordic Village's statement about the federal government's immunity from claims for monetary relief is not relevant to this case because the Smales are seeking to quiet title to land, not suing a sovereign for monetary relief.[19]
¶ 9 Nor does Idaho v. Coeur d'Alene Tribe of Idaho,[20] cited by the Tribe for the proposition that sovereign immunity bars actions with the potential to deprive a sovereign of land, render Anderson inapplicable. In that case, the Coeur d'Alene Tribe sued Idaho and various state agencies and state officials in federal court alleging ownership in the submerged lands and beds of Lake Coeur d'Alene and seeking related declaratory and injunctive relief.[21] Both sides agreed that the Eleventh Amendment bars federal courts from exercising jurisdiction over actions seeking to divest a sovereign of a property interest.[22] The Coeur d'Alene Tribe argued that the Ex parte Young[23] exception to Eleventh Amendment sovereign immunity allows claims against state officers to enjoin official activities that violate federal law. The Supreme Court held that the Ex parte Young exception did not apply because the declaratory and injunctive relief requested would have had the effect of shifting all benefits of ownership and control from Idaho to the Coeur d'Alene Tribe, making the claim against state officials functionally the same as an action seeking to divest the state of its property.[24] Here, unlike Coeur d'Alene, Eleventh Amendment sovereign immunity is not an issue.[25] And the Smales' quiet title action, unlike the Coeur d'Alene Tribe's claims, would not divest a sovereign of ownership and control. Rather, the Smales are attempting to retain what they allegedly own.[26]
¶ 10 In another attempt to distinguish Anderson, the Tribe contends that the distinction between adverse possession and partition makes a difference because the right of partition by a tenant-in-common is absolute.[27] But this is not a distinction because the right to bring a quiet title action, as the Smales did, is similarly absolute.[28] And Anderson does not hold that the absolute nature of a right to bring a certain type of action somehow overrides the doctrine of Indian sovereign immunity. Instead, Anderson holds that the in rem nature of partition meant that Anderson & Middleton Lumber was not asserting claims against the Quinault Nation's *1184 sovereignty.[29] The quiet title action in Anderson is similar to the quiet title action here in two crucial ways: both are proceedings in rem to determine rights in the property at issue and neither has the potential to deprive any party of land they rightfully own.
¶ 11 The Tribe argues that there can be no adverse possession claims against a sovereign.[30] But the Smales allege that they acquired title to the land in question through adverse possession before Noretep deeded the land to the Tribe. As such, they are not attempting to adversely possess a sovereign's land. As the Idaho Supreme Court recognized in Lyon v. State, parties seeking quiet title to land that they allegedly own are not asserting claims against a sovereign.[31] Accordingly, the Smales' claims are not barred by the rule prohibiting adverse possession against a sovereign.
¶ 12 Finally, the Tribe claims that the issue of sovereign immunity was not fully before the court in Anderson. The Tribe's assertion, while correct, does not advance their position or relegate Anderson's holding to dicta. Because Anderson held that sovereign immunity did not apply, the court had no occasion to fully consider the substantive workings of the doctrine.[32] Similarly, this court need not consider whether the Tribe waived sovereign immunity because the doctrine does not apply under these facts.
¶ 13 The Anderson decision was persuasive in a similar case recently decided by the North Dakota Supreme Court. In Cass County Joint Water Resource Dist. v. 1.43 Acres of Land in Highland Township, a landowner opposed to construction of a dam conveyed 1.43 acres of land that would have been flooded by the dam to the Turtle Mountain Band of Chippewa Indians.[33] The water resource district brought an action seeking to condemn the land, and the Tribe moved to dismiss, claiming sovereign immunity.[34] The North Dakota Supreme Court determined that condemnation is an in rem proceeding and, quoting Anderson at length, held as we do here that exercising jurisdiction over in rem proceedings does not implicate sovereignty immunity.[35]
¶ 14 We affirm.
WE CONCUR: LEACH, J., and DWYER, A.C.J.
NOTES
[1] Shoop v. Kittitas County, 108 Wash.App. 388, 393, 30 P.3d 529 (2001), affirmed on other grounds, 149 Wash.2d 29, 65 P.3d 1194 (2003).
[2] Wright v. Colville Tribal Enter. Corp., 159 Wash.2d 108, 111, 147 P.3d 1275 (2006), cert. dismissed, 550 U.S. 931, 127 S.Ct. 2161, 167 L.Ed.2d 887 (2007).
[3] Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) ("Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.").
[4] See Phillips v. Tompson, 73 Wash. 78, 82, 131 P. 461 (1913) (actions to quiet title are proceedings in rem); 1 Am.Jur.2d Actions § 29 (2005) ("A proceeding in rem is essentially a proceeding to determine rights in a specific thing or in specific property, against all the world, equally binding on everyone. It is a proceeding that takes no cognizance of an owner or a person with a beneficial interest, but is against the thing or property itself directly, and has for its object the disposition of the property, without reference to the title of individual claimants. The action of the court is binding, even in the absence of any personal jurisdiction.") (footnotes omitted).
[5] 130 Wash.2d 862, 929 P.2d 379 (1996).
[6] Id. at 864-65, 929 P.2d 379.
[7] Id. at 865, 929 P.2d 379.
[8] Id. The statutory warranty deed transferring title to the Quinault Nation stated that the transfer was subject to the pending suit by the lumber company. Id.
[9] Id. at 866, 929 P.2d 379.
[10] Id. at 873, 929 P.2d 379. Anderson relies on a United States Supreme Court decision upholding a county's jurisdiction over properties owned by individual tribal members and an Indian Nation for the purpose of taxing the land at issue. Id. at 869-73, 929 P.2d 379 (citing County of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation, 502 U.S. 251, 264-65, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992) (characterizing the county's jurisdiction as in rem and holding that exercising jurisdiction over certain real estate for tax purposes is not significantly disruptive of tribal self-government)).
[11] See RCW 7.52.010; see also Schultheis v. Schultheis, 36 Wash.App. 588, 589 n. 1, 675 P.2d 634, review denied, 101 Wash.2d 1016 (1984) ("Partition involves the division of land by joint owners into distinct portions, to be owned separately.").
[12] See Kobza v. Tripp, 105 Wash.App. 90, 95, 18 P.3d 621 (2001) ("An action to quiet title is equitable and designed to resolve competing claims of ownership."); RCW 7.28.010 ("Any person having a valid subsisting interest in real property, and a right to possession thereof, may recover the same by action in the superior court of the proper county.").
[13] 401 F.Supp.2d 219, 229 (N.D.N.Y.2005) ("It is of no moment that the state foreclosure suit at issue here is in rem. What is relevant is that the County is attempting to bring suit against the Nation. The County cannot circumvent Tribal sovereign immunity by characterizing the suit as in rem, when it is, in actuality, a suit to take the tribe's property.").
[14] See El Cerrito, Inc. v. Ryndak, 60 Wash.2d 847, 855, 376 P.2d 528 (1962) ("When real property has been held by adverse possession for 10 years, such possession ripens into an original title. Title so acquired by the adverse possessor cannot be divested by acts other than those where title was acquired by deed. The person so acquiring this title can convey it to another party without having had title quieted in him prior to the conveyance.") (citations omitted).
[15] See Mugaas v. Smith, 33 Wash.2d 429, 431, 206 P.2d 332 (1949) (Conveyance of title to bona fide purchaser does not extinguish title acquired by adverse possession.). The Tribe accuses the Smales of erroneously stating that they had fulfilled the requirements of adverse possession when that issue had not yet been resolved at trial. Because we are reviewing the trial court's ruling on the Tribe's motion to dismiss, we assume the facts as alleged are true. See Berge v. Gorton, 88 Wash.2d 756, 759, 567 P.2d 187 (1977) ("Factual allegations of the complaint must be accepted as true for purposes" of reviewing a ruling on a motion to dismiss.). Thus, for the purposes of our analysis, we assume, as the Smales properly argued, that they will be able to prove the elements of adverse possession.
[16] 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).
[17] Id. at 39, 112 S.Ct. 1011.
[18] "Equally unpersuasive is respondent's related argument that a bankruptcy court's in rem jurisdiction overrides sovereign immunity. As an initial matter, the premise for that argument is missing here, since respondent did not invoke, and the Bankruptcy Court did not purport to exercise, in rem jurisdiction." Id. at 38, 112 S.Ct. 1011.
[19] See Kobza, 105 Wash.App. at 95, 18 P.3d 621 ("Because a quiet title action is a claim for equitable relief, damages are ordinarily not allowed.").
[20] 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).
[21] Id. at 264-65, 117 S.Ct. 2028.
[22] Id. at 281-82, 117 S.Ct. 2028. The Eleventh Amendment's jurisdictional bar applies whenever a state is named as a defendant regardless of the nature of the relief sought. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).
[23] 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
[24] Coeur d'Alene Tribe of Idaho, 521 U.S. at 282, 117 S.Ct. 2028; see also Pennhurst, 465 U.S. at 101, 104 S.Ct. 900.
[25] "[T]he prohibition placed on the power of the federal judiciary by the [E]leventh [A]mendment exceeds the common law doctrine of sovereign immunity." Aquilar v. Kleppe, 424 F.Supp. 433, 436 (D.Alaska 1976) (citing Edelman v. Jordan, 415 U.S. 651, 677 n. 19, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).
[26] In an opinion predating Anderson that was not cited by either party, the Idaho Supreme Court succinctly recognized that a sovereign does not enjoy immunity in actions to quiet title land because the parties seeking to quiet title "are asserting no claim against the sovereignty, but are attempting to retain what they allegedly own." Lyon v. State, 76 Idaho 374, 376, 283 P.2d 1105, 1106 (1955).
[27] RCW 7.52.010 ("[A]n action may be maintained... for a partition" "[w]hen several persons hold and are in possession of real property as tenants in common.").
[28] RCW 7.28.010 ("Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county.").
[29] 130 Wash.2d at 872-73, 929 P.2d 379 ("[Anderson & Middleton]'s action in this case involves no taking of property. It merely seeks a judicial determination of the co-tenants' relative interests in real property and a division of that property according to those interests. The Quinault Nation would lose no property or interest for which it holds legal title.") (footnote omitted).
[30] See In re Yakima River Drainage Basin, 112 Wash.App. 729, 746, 51 P.3d 800 (2002).
[31] 76 Idaho 374, 376, 283 P.2d 1105, 1106 (1955).
[32] 130 Wash.2d at 876-77, 929 P.2d 379.
[33] 643 N.W.2d 685, 689 (N.D.2002).
[34] Id. at 688.
[35] Id. at 689, 692-93.